HALDERMAN DENNISON, MARIE DENNISON

and MARY DENNISON

Plaintiffs-Appellees


vs.


TUCSON GAS AND ELECTRIC COMPANY

JELCO, INCORPORATED

PETER MACDONALD, Chairman of the Navajo Tribal Council

THE NAVAJO TRIBE OF INDIANS

GRAHAM HOLMES, BEN LYNCH

NED PLUMMER and CHARLES PITTMAN

Defendants-Appellants


Decided on December 23, 1974


Fred Johnson, D.N.A., Window Rock, Arizona, for Plainitiffs-Appellees

Perry Allen, Chief Prosecutor, Office of the Prosecutor, Window Rock, Arizona, for Defendants-Appellants

Before KIRK, Chief Justice, BENNALLEY and YELLOWHAIR, Associate Justices


KIRK, Chief Justice


On April 8, 1974, this Court granted the request of Peter MacDonald and the Navajo Tribe of Indians, for a review of the

Trial Court's decision adverse to their interest in the above entitled matter dated March 1, 1974, the same being docket number WR-RO-11-74, in and for the Judicial District of Window Rock, Navajo Nation (Arizona).

The parties will be referred to as plaintiffs and defendants as they appeared in the Trial Court.

Oral arguments were presented on behalf of the parties in this Court on May 9, 1974.

The Court has determined the facts as follows:

1. The plaintiffs, Dennison family, are Navajo Indians residing on the Navajo Reservation near Tohatchi, Navajo Nation (New Mexico), within the exterior boundaries of Navajo Grazing District 14.

2. The plaintiffs have a permit to graze an undisclosed number of sheep in an undefined area of District 14, known as their "traditional use area."

3. The plaintiffs have a home and other improvements, including sheep corrals, as well as what is called an "intangible interest" (liveihood) in the above said area.

4. Sometime in 1973, the defendant, Peter MacDonald, on behalf of defendant, the Navajo Tribe of Indians, granted a right-of-way to defendant, Tucson Gas and Electric Company, for the purpose of constructing and maintaining a power line for the transmission of electrical energy above, over and across Navajo Tribal Land, including some portion of the plaintiffs' "traditional use area."

5. The defendant, Jelco, Incorporated, is a Utah corporation engaged in the construction business and employed by defendant Tucson Gas and Electric Company to construct the above said power line.

6. Defendants Pittman, Lynch, and Plummer appear to be Navajo Indians employed by the Navajo Tribe of Indian Affairs in some capacity, and are alleged to be agents of the defendant Tucson Gas and Electric Company, and in fact, had some part in securing and obtaining plaintiffs' written consent to the passage of the power line over and

across their "traditional use area."

7. The defendant Graham Holmes, is a non-Indian employed by the Navajo Tribe in the Office of the Navajo Land Administration in a supervisory or consulting capacity at Window Rock, and is alleged to have had an active part, and did have some part in securing obtaining the plaintiffs' written consent to the construction of the power line over and across their "traditional use area."

8. The plaintiffs in fact signed some type of consent for the construction of and the passage of the power line over and across their "traditional use area" and they accepted a check in the amount Five Thousand Dollars ($5,000.00) from defendant Tucson Gas and Electric Company for reasons that appear unclear even to the parties.

9. When the defendant Tucson Gas and Electric Company made application to the Navajo Tribe for the right-of-way across Tribal lands, the defendant Peter MacDonald, acting on behalf of the defendant Navajo Tribe of Indians, did not require the applicant of the right-of-way to deposit with the Treasurer of the Navajo Tribe an amount of money equal to at least double the estimated damages made by the Department of Land Investigation in accordance with Navajo Law, as set forth by the Navajo Tribal Council in 16 N.T.C. § 553, for the protection of individual Navajo Indians, who may be dispossessed or partially dispossessed by the granting of just such a right-of-way.

10. When defendant Jelco, Incorporated started construction of the power line over and across plaintiffs' "traditional use area", changing the contour of the surface and removing surface vegetation, etc., the plaintiffs brought a proceeding in the Trial Court to cancel their consents for the construction and the passage of the power line over and across their "traditional use area" alleging that their consent was obtained by fraud, deceit and duress; and for an injunction against all of the defendants from further trespass to their property; and for damages for the actual trespass to their use land; and for punative damages for the insolent manner in which the trespass was accomplished. Plaintiffs offered to return the uncashed check for Five Thousand Dollars ($5,000.00) to the defendant Tucson Gas and Electric Company.

11. The Trial Court dismissed the action for damages against the following defendants for lack of jurisdiction:

> (1). Tucson Gas and Electric Company
> (2). Jelco, Incorporated
> (3). Holmes, Lynch, Plummer and Pittman

The Trial Court denied the plaintiffs' request for an injunction against Peter MacDonald, the Navajo Tribe of Indians, and the other defendants. The Trial Court further directed that a date be set for the remaining issues, i.e. damages, and whether the plaintiffs were denied the opportunity to exhaust their administrative remedies.

12. The defendants Peter MacDonald and the Navajo Tribe of

Indians, maintain through their counsel, the Navajo Prosecutor, Mr. Perry Allen, that the Navajo Tribal Government is immune from suit by one of its members, in any event, under the legal concept of sovereign immunity, and that Peter MacDonald, Chairman of the Tribal Council in negotiating the right-of-way grant to the Tucson Gas and Electric Company was acting within the scope of the authority vested in him by the Navajo Tribal Council and that therefore he too is immune from suit.

The Court has further determined that this case involves the nature, source, and the lawful exercise of the governmental power of Eminent Domain, a subject with which the parties hereto and their lawyers of record seem to be totally unfamiliar and for that reason we feel impelled to make the following comments and observations:

Eminent Domain is the power of any sovereign to take or to authorize the taking of any property within its jurisdiction for public use without the consent of the owner. It is an inherent power and authority which is essential to the existence of all governments.

Therefore, as in this case, the sovereign (the Navajo Tribal Government), has the power and the authority to take or to authorize the taking of the Dennison property, all or part of it, without their consent. Plaintiffs' consent to the granting of the right-of-way is totally unnecessary.

But, before the government can exercise this power of taking private property without the owners consent, it must provide just compensation for the property taken and provide the owner thereof with due process of law.

These two prohibitions or restrictions on the exercise of the inherent governmental power of Eminent Domain are derived from:

A.   The Constitution of the United States - 5th Amendment.

   (1)   Private property shall not be taken for public use without just compensation.

   (2)   No person shall be deprived of life, liberty, or property without due process of law.

B.   Constitutional Rights of Indians, N.T.C. App., P. 317, Section 1302, (5) (8), known as the Indian Civil Rights Act of 1968.

   (1)   No Indian Tribe in exercising the powers of self-government shall:

      (a)   ...(5) take any private property for public use without just compensation.

      (b)   ...(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of life, liberty or property without due process of law.

C.   Navajo Bill of Rights, 9 N.T.C. §§ 1, 5 and 8.

   (1)   Note, that the Navajo Tribal Council, prior to the passage by Congress of the Indian Civil Rights Act of 1968, guaranteed to the Navajo people that it would make no law for the taking of private property for public use without just compensation.

   (2)   Also, the Navajo Tribal Council has guaranteed that it will make no law which denys to any person within its jurisdiction the equal protection of its laws or deprive any person within its jurisdiction of life, liberty, or property without due process of law.

Furthermore, under the customary division of governmental powers into three (3) branches, executive, legislative, and judicial, the right to authorize the exercise of the power of Eminent Domain is wholly legislative (Navajo Tribal Council) and there can be no taking of private property for public use against the will of the owner with out direct authority from the legislative body (Navajo Tribal Council) and then the taking must be only in the manner as prescribed by the legislative body (Navajo Tribal Council).

In 1960, the Navajo Tribal Council vested the exercise of the Eminent Domain power of the Navajo Nation in the Executive Branch of the Navajo Government, and provided by law the exact manner and the procedure to be followed in its execution or use. Tribal Council Resolution CJA-18-60.

Upon reading the above said tribal resolution, as codified in 16 N.T.C., we find that:

Whenever an application is filed with the Navajo Tribe for a right-of-way across tribal lands which may effect the possessary rights of individual Navajos, the Chairman shall:

A. Require the Department of Land Investigation of the Navajo Nation to:

(1) Estimate probable damages to the improvements of individual Navajo's property upon the land.

(2) Estimate the value of probable economic loss to individual Navajos whose customary use right for grazing and other purposes may be effected by the granting of the right-of-way.

-100-

B.  Next, when the estimated probable damages to individual Navajos property upon the land and the probable economic loss to individual Navajos because of the lessening of their use right, if any, is figured and totaled by the experts from the Navajo Department of Land Investigation, the Chairman of the Navajo Tribal Council shall:

    (1)  Require the applicant of the right-of-way, in this case, Tucson Gas and Electric Company, to deposit with the Navajo Tribal Treasurer, a sum of money equal to at least double the estimated damages as made by the Department of Land Investigation. This is the Tribal Council's guarantee to the Navajo people that their property will not be taken for public use by their government without just compensation and that the taking will be in accordance with the law as prescribed by the Navajo Tribal Council (due process of law) and not in accordance with the whimsical capricious however well intended, policies of governmental servants.

    (2)  After the first step has been taken, that is the estimate made and recorded and the deposit of at least twice the amount of the estimate has been made to the Navajo Tribal Treasurer for the protection of the rights of the individual Navajos effected, then and only then may the right-of-way agreement be finalized and COMMENCED ON BEHALF OF THE GRANTEE (Tucson Gas and Electric Company). This is Navajo due process of law, for the next step is:

C.  To make the individual Navajos affected by the right-of-way, an offer of the amount of damages as previously determined. It cannot be just any amount but the previously determined amount made by the Department of Land Investigation by using the formula as set forth by the Navajo Tribal Council.

    (1)  Where the individual Navajo accepts the offer of the damages as determined by and in accordance with the law, the Chairman shall cause the Treasurer to pay the Navajo that amount out of the deposit to which he is entitled and return the excess of the deposit to the grantee of the right-of-way.

    (2)  Where the individual Navajo refuses to accept the amount of money damages as determined

by the Department of Land Investigation within a reasonable time, the Chairman shall set in motion a "condemnation proceeding" where in where the Resources Committee of the Navajo Tribal Council makes the final judgment, for,
(3) The Chairman shall:

(a) Appoint one (1) appraiser.
(b) Individual Navajo shall appoint one (1) appraiser.
(c) The two (2) appraisers shall appoint a third appraiser.
(d) If the two (2) appraisers cannot agree upon the third appraiser within ten (10) days, the Chairman may appoint the third appraiser.

(4) The three (3) appraisers shall:

(a) Examine the improvements alleged to be damaged.
(b) Appraise and determine the damages.

(5) The determination of the appraisers shall be submitted to the Resources Committee and when, if, and as approved by said committee, the amount thereof shall be final. Anything less cannot be considered due process of law.

Such disbursement shall be made from the deposit without further appropriation of the Navajo Tribal Council. Furthermore, all sums of money deposited with the Treasurer by the applicant of the right-of-way for the above said purpose, if not disbursed in thirty (30) days, shall be deposited in a Federal Savings and Loan Assocation or invested in bonds of the United States until needed for disbursement in accordance with the above procedure.

Further, no payment to an individual which includes a determination for loss of economic livelihood shall be made, until he has surrendered for cancellation his grazing permit, but only to the

animal units in excess of the carrying capacity of the land remaining in his customary use area. Payment of Ten Dollars ($10.00) for each cancelled unit shall be made.

It should be noted that Chapter 11 of Title 16, Navajo Tribal Code entitled, "Compensation for Improvements and Customary Use Rights upon Adverse Disposition of Land", by the Navajo Tribe, does not impose a duty upon the individual Navajo effected, to initiate an administrative proceeding when dissatisfied with the amount of damages offered. No, the duty imposed by the Navajo Tribal Council in enacting the above resolution, is imposed upon the Executive Branch of the government to initiate or start condemnation proceedings, not before the Courts, but before the Resources Committee of the Navajo Tribal Council, whenever a Navajo citizen adversely affected by the granting of the right-of-way across tribal lands, refuses to negotiate or accept the amount of money offered to him by the tribe, as just compensation. In other words, the Navajo Tribal Council has vested the judicial authority of determining what is or what is not just compensation under the above law, in the Resources Committee of the Navajo Tribal Council, rather than in the Courts of the Navajo Nation.

Now we come to the remedies of the individual Navajo who may be adversely effected by the granting of a right-of-way across tribal lands.

It is settled law that when land is taken or damaged by

authority of law and in compliance with the provision of the law, and the law provides a means of recovering damages which may be instituted by the person in possession of the land, the statutory remedy provided is exclusive and no other remedy will be permitted.

But, when the statutory remedy provided in the law cannot be initiated by the owner of the land, and the condemnor (Tribe) alone can put the remedy in to operation and fails to do so, then the statutory remedy that is provided by the law is not exclusive and the owner who is alleged to have been damaged may resort to his other remedies. These remedies include injuction relief as well as relief for damages.

When we test the facts of this case with the above law we find that if the plaintiffs were damaged it resulted from the exercise of eminent domain power of the Navajo Nation and that the eminent domain power of the Navajo Nation as exercised by the Executive Branch of the Navajo Government in this particular case was illegal and not in compliance which is designated the "Governing Body" of the Navajo Nation.

It is one of the glories of our society that no man or no division of government is above the law. The Navajo Tribal Council has declared that the Navajo people have a right to be secure in their possessions and that they shall not be taken from them by their government except by due process of law and the payment of just compensation. This philosophy of the law is in keeping with the Declaration of Independence, the great charter of all free men. That

-104-

the only reason governments are established among men is to make secure the basic rights of the people. We intend to up hold this concept and to permit the law to become the great teacher rather than the elected or appointed governmental officials.

It goes without saying that if the officials and employees of the Executive Branch of the Navajo Government, had exercised the power and authority vested in their branch, in the manner prescribed by law, the plaintiffs in this case would have no standing in this Court because of the remedy of the statute would have provided due process of law and just compensation. But, since they did not do so, we must hold for the plaintiff.

The Court has always upheld and presently does uphold the sovereign immunity doctrine of the Navajo Nation, but for anyone to seriously impose that defense under the facts of this case causes concern among the Court, regarding the competency of the legal advisors to the prosecutor and the competency of the legal advisors to the office of the Navajo Land Administration. All that the plaintiffs would be entitled to from the Navajo Nation under the statute, in any event, would be, just compensation. How could they be deprived of this simply because some officials and employees in the Executive Branch, to put it mildly, neglected to follow the law? We consider the Navajo Nation the only real defendant and consider the written consent of the plaintiffs to be of no force or effect and we pass no judgment on the conduct of the other defendants at this time.

Unless the Prosecutor files a confession of judgment on behalf of the Navajo Nation in this court within ten (10) days from the date of this order, in an amount concurred in by the plaintffs, the Trial Court is directed to set the case for immediate trial on the sole issue of damages, if any, suffered by the plaintiffs. The Trial Court shall use care and determine the damages if any, in accordance with the formula as set forth by the Navajo Tribal Council in 16 N.T.C., Chapter 11. The judgment, if any, shall be directed and entered against Peter MacDonald, Chairman, and the Navajo Nation.

BENNALLEY, Associate Justice, and YELLOWHAIR, Associate Justice, concur.